UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA					PLAINTIFF

vs.								CASE NO. 1:15CR-26-GNS

LEON LUSSIER							DEFENDANT

– *ELECTRONICALLY FILED* –
**SENTENCING MEMORANDUM**

Comes the United States of America, through counsel, Assistant United States Attorney Jo E. Lawless, and files its memorandum in support of sentencing in this action currently scheduled for August 17, 2016.

I. Factual Background

On Tuesday, January 12, 2015, the Toronto Police Service Child Exploitation Section received information regarding the investigation of a group of individuals involved in the sexual abuse of children, including the distribution of child pornography. One of the targets was believed to be in Toronto, Ontario, Canada.

On June 23, 2015, Toronto, Ontario, Canada Police Service Detective Constable Janelle Blackadar was logged into an undercover Software Application "B" account and was engaged in a text-based chat with a user who provided Detective Blackadar with an active Software Application "A" room number.1

That evening, Detective Blackadar entered the Software Application "A" room and observed that user "I luv boys" was streaming child pornography videos by sharing his computer screen. An adult male was digitally penetrating a prepubescent boy. The video changed to two naked prepubescent boys in a shower room who kissed. The next scene showed a young,

---

1 Specific information for the accounts and room numbers are not included in to protect the integrity of ongoing criminal investigations.

prepubescent boy who removed his clothing, and was naked. The video showed an adult male masturbating the child, as well as the child masturbating himself. The video changed to a different naked, prepubescent boy and an adult male engaged in fellatio on the boy.

On July 15, 2015, Detective Blackadar was conducting an investigation in a Software Application "A" room. That afternoon, Detective Blackadar observed that "I luv boys" was a participant in the room and was streaming child pornography through his webcam of a young boy engaged in oral sex acts. One minute later, "I luv boys" was streaming through his webcam a prepubescent boy masturbating himself. Detective Blackadar observed that "I luv boys" texted all participants "No blank screens" (meaning "I luv boys" wanted all participants to be showing their webcams). Then, "I luv boys" texted "I don't have rape or baby videos – I don't like them". A short while later, Detective Blackadar observed "I luv boys" stream from his webcam a child pornography video of a young boy engaged in fellatio.

On July 21, 2015, Detective Blackadar again observed "I luv boys" in the room. On that date, Detective Blackadar observed "I luv boys" streaming child pornography through the webcam. At a later point, "I luv boys" posted to the users in the room "No blank screens – put on a cam or a vid".

The next day, Detective Blackadar contacted Homeland Security Investigations Phoenix, Arizona Special Agent (SA) Austin Berrier. Detective Blackadar advised SA Berrier that Detective Blackadar had been monitoring Software Application "A" Video Conferencing Room in an undercover capacity during which Detective Blackadar observed numerous individuals either streaming videos of child pornography, watching videos, masturbating to the exploitive content, commenting on the content, or some combination thereof.

SA Berrier served a Department of Homeland Security Summons on Software Application "A" requesting IP logs and account data for the separate Software Application "A"

users. The summons return provided the most recent IP addresses utilized by the suspect users and included IP addresses for other users that were in the Software Application "A" room with the suspect users to include "I luv boys". Software Application "A" provided data which showed two (2) separate logins for "I luv boys", as follows:

> Login: 2015-07-23   01:07:41(GMT) to 2015-07-23   02:01:53 (GMT)
> Login: 2015-07-23   02:02:14(GMT) to room termination
> IP for both Logins:   74.133.110.24
>     (Geo-located to Bowling Green, Kentucky).

On August 17, 2015, SA Berrier electronically served a Department of Homeland Security on Time Warner Cable for the subscriber data for the above-referenced IP address. That same day, SA Berrier contacted HIS SA Derek Curtis about the investigation. The next day, Time Warner Cable provided the following information pertaining to IP address 74.133.110.24:

> Subscriber Name: Leon LUSSIER
> Subscriber Address: XXXX Cove Drive, Bowling Green, Kentucky 42101
> Activate Date: 12/02/2011
> Deactivate Date: Still Active

On September 1, 2015, law enforcement officials executed a federal search warrant on XXXX Cove Drive, Bowling Green, Kentucky. Upon serving the search warrant, an individual identified as Leon Lussier was encountered attempting to leave the residence. Law enforcement officials advised Lussier of the search warrant and asked Lussier if there was anyone else in the house or if anyone resided with him. Lussier stated that there was no one in the house and that he lived alone.

The search warrant resulted in the seizure of numerous computer media, including an HP Pavilion computer. A preview of the HP Pavilion by a Computer Forensic Agent (CFA) revealed several videos containing child pornography that had previously been observed by an undercover officer. Two of the recovered videos are described as follows:

3

>Length: 0:02:26
>Description: The video depicts an adult male arousing a pre-pubescent juvenile male by rubbing the juvenile male's penis with his (adult male) hand. The adult male then attempts to insert his (adult male) penis into the pre-pubescent male's anus.

>Length: 0:03:25
>Description: The video depicts an adult male molesting a pre-pubescent juvenile male by inserting a digit (finger) into the pre-pubescent juvenile's rectum.  The adult male then removes the digit and inserts a sex toy into the pre-pubescent juvenile's rectum.

Both of the videos set out above were observed by the undercover officer on July 15, 2015.

Individuals who participated in Room 1 did not simply share previously acquired child pornography videos and still images.  In some instances, individuals live-streamed the ongoing sexual abuse of children.  The criminal investigation concerning these activities is ongoing.

Further forensic examination of the digital devices revealed the presence of numerous images (including videos) of child pornography, that is, minors engaging in sexually explicit conduct that had been traded and acquired.  Agents found over 800 videos stored on the computer and 11 DVDs.  Lussier saved the same video in several different locations.  For example, file name "116," a video depicting a prepubescent male engaging in sexual intercourse with a prepubescent female was stored on the computer, DVD 1, DVD 4, and DVD7.  In addition to the videos, the forensic review revealed the presence of 173 still images.

The case agent submitted the materials to the National Center for Missing and Exploited Children for comparison to the Child Victim Identification Program's hash values.  The CVIP hash values correspond to previously identified (*i.e.*, known), victims and/or series of child pornography.  Lussier's collection included nine still images 60 videos depicting known child victims.  Victim impact statements from several victims have been previously submitted to the Court (*via* United States Probation Office) and defense counsel.

The videos and still images primarily showed boys and involved different types of sexual activity, including sadistic images. For example, file name "! ! [XXXX] (Completed4'32)^"[2] showed a male toddler being masturbated and digitally sodomized. File name "!perfect[XXX]"[3] is a video depicting an adult male sodomizing a prepubescent male child. Using the 75:1 ratio for images per video[4] Lussier is responsible for 60,173 images (60,000 for movies and 173 still images).

As noted earlier, the users of Room 1 communicated directly with one another. At least one user live-streamed the sexual abuse of a child entrusted to his care. Lussier communicated with this individual in Room 1. That person has been charged with sexually abusing his younger brother and live-streaming that sexual abuse to the people in Room 1. On May 8, 2015, Lussier a/k/a "I luv boys" sent a message to the person referenced above. Lussier's message included the following advice: "I think it is important that we always do what makes us feel safe. I haven't gotten caught by the cops because I don't give out information or take stupid chances." Additional investigation also revealed Lussier's communications with others – outside Room 1 – using various computer and social media platforms for the purpose of sharing child pornography materials.

Lussier acquired the child pornography files *via* the Internet. He knowingly possessed the files on September 1, 2015. Lussier knowingly transported and distributed numerous child pornography files to other individuals using the Internet between June 23, 2015, and July 22, 2015. He engaged in the conduct from his home in Warren County, Kentucky.

---

[2] The full file name has not been disclosed in order to prevent further accessing / distribution.
[3] *Id.*
[4] *See* U.S.S.G. § 2G2.2, Commentary, Application Note 4(B).

## II. Crimes of Conviction

Lussier pled guilty to violating 18 U.S.C. §§ 2252A(a)(1), (a)(5)(B), (b)(1) and (b)(2) – transporting and possessing child pornography. He did so pursuant to a written Plea Agreement.

## III. Sentencing Guidelines calculations

Even in the post-*Booker* sentencing era, the Sixth Circuit Court of Appeals has reiterated the continued importance of the United States Sentencing Guidelines in the federal sentencing process. *See United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008). The *Anderson* court opined that

> [a]t the outset, we note that it is unclear that an error in determining the Guidelines recommendation can ever be considered harmless post- *Gall. Gall* clearly directed the focus of sentencing courts to the Guidelines. For instance, the Court held that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. 128 S.Ct. at 596. '[T]he Guidelines should be the starting point and the initial benchmark,' so as to ensure fair sentencing 'administration and to secure nationwide consistency.' *Id.* Furthermore, the Court held, '[t]he fact that 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.' *Id.* at 596 n. 6. If the district court decides to sentence a defendant outside of the Guidelines range, then the district court 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. [The Court] f[ou]nd it uncontroversial that a major departure should be supported by a more significant justification than a minor one.' *Id.* at 597. On appeal, the Courts of Appeals 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range .... or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.' *Id.*

*Id.* at 329. The *Anderson* court further noted that such a focus on the Guidelines "is consistent with the Court's other recent sentencing precedent" and went on to reference the decisions in *United States v. Booker*, 543 U.S. 220, 245-46, (2005), *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007), and *Rita v. United States*, 127 S.Ct. 2456, 2468 (2007), to include the opinions' respective references to the role of the Guidelines. *Id.*

The United States previously gave notice that it has no objection to the Guidelines as presented in the PSR. Similarly, the defense noted no objections to the calculations. The United States understands that the defense intends to seek a variance from the Guideline range.

| | | |
|---|---|---|
| **Base Offense Level:** | 22 | U.S.S.G. § 2G2.2 |
| | +2 | U.S.S.G. § 2G2.2(b)(2)(under age 12) |
| | +5 | U.S.S.G. § 2G2.2(b)(3)(B)(distribution) |
| | +4 | U.S.S.G. § 2G2.2(b)(4)(sadistic / violence) |
| | +2 | U.S.S.G. § 2G2.2(b)(6)(use of computer) |
| | +5 | U.S.S.G. § 2G2.2(b)(7)(D)(> 600 images) |
| | 40 | |
| | - 3 | U.S.S.G. § 3E1.1(a) & (b)(acceptance) |
| **Total Adjusted Offense Level** | 37 | |

In *United States v. Cover*, 800 F.3d 275, 279-280 (6th Cir. 2015), the court determined that the United States must put forth proof to substantiate enhancements under the Sentencing Guidelines. The United States accomplishes this, most often, by making the materials and information available to the United States Probation Officer responsible for preparing the PSR. That was undertaken in this case.

In summary, the enhancements set out in the PSR are clearly supported by the facts and evidence in the case at bar. First, Lussier pled guilty to transporting (distributing) child pornography. Therefore, the appropriate base level is 22. As referenced above, the child pornography recovered from Lussier's digital devices, as well as the materials shared with others in Room 1, involved children well under the age of 12. Lussier's participation in Room 1 and other computer-based platforms involved the exchange of child pornography materials. He distributed child pornography in order to gain access to similar materials from other like-minded individuals. The materials involved, among other forms of abuse, the anal penetration of young children[5] Lussier admitted to using his computer while engaging in the criminal conduct for

---

[5] The general meaning of sadism is "the infliction of pain upon a love object as a means of obtaining sexual release." *Cover*, 800 F.3d at 280 (quoting *Webster's Third New International*

which he stands convicted. Finally, the evidence in the case clearly involved more than 600 images.

The last two enhancements are often the point of contention in child exploitation cases. With regard to the first, the use of computer enhancement, the U.S.S.G. § 2G2.2(b)(6) enhancement for using a computer aims at punishing a distinct harm beyond the mere transmission of child pornography. *United States v. Lewis,* 605 F.3d 395, 402 (6th Cir. 2010). Specifically, "[d]istributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute." *Id*. (quoting *United States v. Lebovitz,* 401 F.3d 1263, 1271 (11th Cir.2005) (quoting H.R.Rep. No. 104–90, at 3–4 (1995), as *reprinted in* 1995 U.S.C.C.A.N. 759, 760–61)).

"[T]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks,* 628 F.3d 791, 800 (6th Cir.2011) (emphasis in original); *see also Cunningham,* 669 F.3d at 733 (holding that "a district court is entitled to rely on the § 2G2.2 enhancements unless it has a reasonable policy basis for not doing so"). *Brooks* and *Cunningham* clearly support that a district court has the discretion to apply the Guidelines' two-level enhancement for

---

*Dictionary* 1997–98 (2002); *see also United States v. Groenendal,* 557 F.3d 419, 425 (6th Cir.2009)). Under Sixth Circuit precedent, there are two ways to show that an image is sadistic: (1) offer evidence that the image depicts the sexual penetration of a prepubescent child, in which case we presume that the image is "inherently sadistic," *Cover*, 800 F.3d at 280 (quoting *United States v. Corp,* 668 F.3d 379, 390 (6th Cir.2012); *Groenendal,* 557 F.3d at 426, largely because such conduct is "likely to cause pain in one so young," *Corp,* 668 F.3d at 390; or (2) offer evidence that the image depicts violence or the "infliction of pain," either mental or physical.)

computer use. *United States v. Ziska*, 602 Fed.Appx. 284, 289 (6th Cir. 2015).

It is true that the facts of most child pornography cases will trigger the enhancement. However, to avoid the imposition of overly severe sentences when § 2G2.2 is referenced, the Commission encourages courts to consider the content of the defendant's child pornography collection, the degree of his involvement in a child pornography community, and any history[6] of sexually abusive, exploitive or predatory behavior, in addition to the pornography offense. *United States v. Kisling*, 2015 WL 5055512 at *3 (ND OH Aug. 25, 2015). Application of the enhancement is especially appropriate in this case. Lussier's use of the computer allowed him the opportunity to use cutting-edge platforms resulting in virtual instantaneous trading of child pornography video and still imagery. He, and others, had access to live-streaming sexual abuse of children as well as the ability to communicate with like-minded individuals – sharing exactly what their preferences were and what they wanted to see. But for the use of the computer, participation in this type of child sex exploitation is virtually impossible.

Additionally, the United States acknowledges that defendants are able to amass significant numbers of images with relative ease. Nevertheless, not every child pornography offender amasses large quantities of images. The Court should also consider the content of the collection, as noted above. The fact that we often discuss cases in sterile terms of number of images, number of videos, enhancements that apply or do not apply should never overshadow the base destruction caused by people who are sexually interested in children and derive pleasure through acquiring and trading the crime scene photos/videos that capture real-life, hands-on

---

[6] It is not unusual, in fact – it is often the case, for individuals convicted of child pornography offenses to come before the Court with little or no criminal history. The absence of criminal history, however, is not the only factor for determining prior sexual conduct with children. There is no clear test to determine past conduct or predict future dangerousness. This conundrum was brought to light in the study conducted at Butner by Doctors Hernandez and Bourke. *See* Exhibit A.

sexual exploitation. In other words, the number of files is how we analyze the defendant's conduct. Each file, however, represents the life of a child – forever impacted. A higher sentence based on the number of children exploited, is wholly appropriate.

### IV.  Criminal History

The United States concurs with the criminal history calculation as set out in the PSR.

### V. Statutory Factors

#### A. Minimum and maximum penalties

The statutory mandatory minimum sentence required for Count 1 is 5 years' imprisonment, with a maximum of 20 years' imprisonment. There is no mandatory term of imprisonment for Count 2. The maximum potential penalty is 10 years in prison. The maximum potential fine for each count is $250,000.00, for a total of $500,000.00. The term of Supervised Release for each count is not less than five years and the maximum is life.

#### B. 18 U.S.C. § 3553(a) factors

The total Sentencing Guidelines' offense level is 37. The Criminal History Category is correctly calculated at I. Consequently, the recommended punishment range is 210-362 months in prison.

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). For the reasons that follow, the United States respectfully requests that the Court impose a sentence of 180 months'[7] imprisonment followed by a life term of Supervised Release.

Title 18, United States Code, section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

---

[7] The United States will make a motion pursuant to U.S.S.G. 5K1.1 during the Sentencing Hearing.

>(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>(2) the need for the sentence imposed—
>
>>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>(B) to afford adequate deterrence to criminal conduct;
>>(C) to protect the public from further crimes of the defendant; and
>>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>(3) the kinds of sentences available;
>
>(4) the kinds of sentence and the sentencing range established for--
>
>>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
>>. . .
>
>(5) any pertinent policy statement--
>>. . .
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

Lussier stands convicted of very serious child exploitation offenses. He was not a casual observer/collector of child pornography. He was actively involved in an online community of like-minded individuals. The communications within Room 1 demonstrate his leadership role, and purposeful efforts to keep law enforcement officials from infiltrating the group. Lussier is a well-educated man who maintained gainful employment in a position of trust for many, many years. He carefully hid his criminal conduct from the people in his professional and personal life until the undercover operation revealed those actions.

The sentence imposed in this action should be substantial in order to adequately reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the

11

offenses, deter further criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  A sentence of 15 years' imprisonment meets these factors.  Such a sentence will reflect the seriousness of Lussier's criminal conduct.  A significant sentence of imprisonment will also promote respect for the law and give clear notice that child sex offenders will be punished harshly.  A 15-year sentence will serve as a deterrent for further criminal conduct and protect the public from further crimes by Lussier.  With regard to avoiding sentencing disparities, a 15-year sentence is in line with other child pornography sentences imposed in this District.

A 15-year sentence will not adversely impact the defendant's ability to pay restitution in this case, should the Court impose it.  The United States has received a restitution request from one victim.  The request has been shared with defense counsel and the United States Probation Office.  The matter will be addressed during the upcoming Sentencing Hearing.  Early in this investigation and prosecution, Lussier had a significant amount of money in his personal account.  He certainly had the ability to pay restitution.  A term of imprisonment – as contemplated by the Plea Agreement – will not adversely impact his ability to pay any restitution ordered by the Court.

In considering the kinds of sentences available, it cannot be overlooked that a statutory mandatory minimum term of imprisonment applies here. Moreover, it is very important to focus on Congressional intent regarding punishment in child sex offense cases (as evidenced in the Sentencing Guidelines and pertinent statutes). Congress and the Sentencing Commission have recognized that the Internet has fundamentally changed the nature of child pornography offenses.  Child pornography is now an explosive problem of national and international significance.  Congress and the Sentencing Commission have set large penalties both to deter individuals from

participating in this community and to punish those who provide networking and support for people committing sex offenses against children. Within the past fifteen years, Congress and the Sentencing Commission have systematically increased the penalties (both statutory-mandatory minimum and advisory Guideline) for child pornography offenders. Oddly enough, Congress's actions are continually cited by defense attorneys as a reason for sentencing child pornography offenders to below Guideline sentences.

The Sixth Circuit, however, explained that district courts should not disregard the child pornography sentencing guidelines based on Congress's role in increasing them. *See United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012).   In *United States v. Bistline*, the Sixth Circuit reviewed a district court's reasoning for sentencing a defendant to a below guideline sentence. *Id*. The district court largely based its decision on its belief that Congress took too active a role in crafting and amending section 2G2.2, and that 2G.2 was not a result of empirical study. The Sixth Circuit soundly rejected that reasoning, noting that Congress's role is to define crimes and fix penalties. *Id*. at 761.   It further stated that Congress's power to make sentencing policy does not arise from a delegation from anyone . . . instead [it] flows directly from the Constitution.   *Id*. at 764. Nothing in the Constitution confines Congress's sentencing power to empirical grounds. *Id*. Congress is free to dictate sentencing enhancements based upon Aa retributive judgment that certain crimes are reprehensible and warrant serious punishment.   *Id*. at 764.   Congress's long and repeated involvement in raising the offense levels of section 2G2.2 makes clear that the grounds of its action were not only empirical, but retributive-that they included not only deterrence, but punishment.   *Id*.   Because Congress has taken such an interest in crafting the punishment for criminals guilty of child pornography offenses, section 2G2.2 should not be marginalized when sentencing those individuals.

The Sentencing Commission has proposed some changes to the child pornography

13

guidelines that will take effect this November unless Congress takes some action to block it. Interestingly enough, the Commission makes no change to the offense characteristics that defendants routinely cite as being unreasonable. The commission makes no change to the enhancements for the number of images (2G2.2(b)(7)), or the enhancement for possessing prepubescent images (2G2.2(b)(2). The commission did, however, expand the conduct that gives rise to the 4 level enhancement of 2G2.2(b)(4), to include images of infants and toddlers in addition to the sadistic and masochistic portrayals. Although many defendants rail against the child pornography guidelines and advocate for certain amendments, the amendments that are coming actually increase the scope of conduct encompassed by certain specific offence characteristics. Because the guidelines are advisory, the Court can consider the upcoming amendments when determining an appropriate sentence. *See United States v. Mateos*, 623 F.3d 1350 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1540 (2011) (Justice O'Connor, sitting by designation, holding that forthcoming changes to the sentencing guidelines inform both the sentencing and reviewing courts on the appropriate sentence in a given case).

 Lussier's active involvement in an online community whose sole purpose is the sexual exploitation of children warrants a significant sentence. A 15-year sentence meets the statutory sentencing factors under the circumstances of this case.

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests the Court to apply the Sentencing Guidelines as set forth above, follow the statutory directives set out in 18 U.S.C. § 3553(a), and impose a sentence of 15 years' imprisonment, followed by a life term of Supervised Release.

        Respectfully submitted,

        JOHN E. KUHN, JR.
        United States Attorney

        /s/ *Jo E. Lawless*
        Jo E. Lawless
        Assistant United States Attorney
        717 West Broadway
        Louisville, Kentucky 40202
        (502) 625-7065
        Fax (502) 582-5097

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by electronic means through the Court's ECF system on August 16, 2016, to defense counsel.

        /s/ *Jo E. Lawless*
        Jo E. Lawless
        Assistant United States Attorney